MDR

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Adam Paul Blomdahl,

    Plaintiff,

v.

Director David Shinn, et al.,

    Defendants.

No. CV 21-01863-PHX-MTL (DMF)

**ORDER**

On November 4, 2021, Plaintiff Adam Paul Blomdahl, who is confined in a Maricopa County Jail, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff subsequently filed an Application to Proceed In Forma Pauperis (Doc. 4). The Court will grant the Application to Proceed. Because Plaintiff has failed to state a claim, the Court will dismiss the Complaint with leave to amend.

**I.    Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

. . . .

JDDL-K

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc). Plaintiff's Complaint will be dismissed for failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

**III. Complaint**

In his three-count Complaint, Plaintiff seeks monetary damages and injunctive relief from Defendants Arizona Department of Corrections (ADC) Director David Shinn, Deputy Warden Scott, Disciplinary Captain Brennen, and Unit Manager Miller.

In **Count One**, Plaintiff raises an Eighth Amendment claim regarding his medical care. He contends that when he became "seriously ill w[ith the] coronavirus and/or a deadly infectious disease" on June 15, 2020, Defendant Scott was in charge of the unit on which Plaintiff was confined. Plaintiff alleges Defendant Scott "did not ensure the safety and cleanliness" of the unit. Plaintiff claims that for over 24 hours, he had "needless pain and suffering," was "dry heaving/vomiting," and was "forced into substandard conditions of confinement." Plaintiff asserts that when he later requested his medical records through ADC's grievance/request system, he was denied access to his records. Plaintiff also claims there is a "liberty interest involved" because "while the grievance system was effectively unavailable," he was denied "regular legal calls, (LRT) legal resource tech. from tablet/law library"; was denied "rec/shower on a regular basis"; and was "subject[ed] to excessive transfers" and "mass punishment by using excessive tear gas in confined spaces," which harmed his lungs and caused breathing problems. Plaintiff claims Defendants Shinn and Scott enforced "this policy" against Plaintiff, which "caus[ed] injuries, as cruel and unusual punishment in [Plaintiff's] pod to force inte[]grat[ion], (reclass) out of unit." He alleges that because Defendants Shinn and Scott failed to ensure his safety and the cleanliness of his pod, he suffered for over 24 hours with an infectious disease, developed "as[th]ma[-]type symptoms" and shortness of breath, and was "den[ied] needs/medical records."

. . . .

In **Count Two**, Plaintiff raises an Eighth Amendment claim regarding disciplinary proceedings. He claims that between November 22, 2019, and September 10, 2021, Defendant Brennen was the resource officer for disciplinary proceedings and "used discriminatory punishment against Plaintiff[] for refusing to sign the (IHP) inte[]gration form." Plaintiff alleges this claim is "for injunctive relief on an unconstitutional 'override' system per D.O. 801 policy and punitive damages for emotional distress/pain and suffering." Plaintiff claims that during this time, there was a "national state of emergency and pand[e]mic crisis," he was being denied regular recreation and showers, and he was being "unfairly punished" for taking "bird[ ]baths" in the toilet and sink in his cell. He asserts that on a number of occasions, he was "punished" for "practicing good hygien[e] and cleanliness in his cell while being denied regular rec[reation]/shower[s]." Plaintiff alleges his "property was even s[ei]zed, not on disciplinary form as punishment, [his] radio/headphones [were] taken, [and his] headphones [were] never returned." Plaintiff also alleges that "[d]ue to [the] nature of [the] accusation[s against him] of []indecent exposure,] Plaintiff requested Defendant Brennen provide "private hearings," but this request was denied. Plaintiff asserts that, as a result, he was "har[]assed and even threatened" by other inmates in his housing unit, which caused "emotional distress and needless suffering." He claims Defendant Brennen and Shinn both enforced "this unconstitutional over[r]ide policy" and punished Plaintiff "unfairly[,] as a[ ]way to use discrimination and ex. transfers to force inte[]grat[ion]/reclass out of [the] pod."

In **Count Three**, Plaintiff raises an Eighth Amendment claim regarding basic necessities. He claims that between January and August 2020, Defendant Miller was the pod manager and was "in charge of the normal operations of the unit" and addressing grievances. Plaintiff contends he became seriously ill with either COVID-19 or an "unidentified infectious disease" "due to a denial of basic necessities." He alleges he became dehydrated, could not eat or drink, and was dry heaving and vomiting profusely for 24 hours. He claims he went to the medical department and during the three hours he was there, he was dry heaving and vomiting over a trash can, with his hands cuffed behind

his back, and he believed he might die from the illness. Plaintiff alleges a medical technician gave him an injection to help with his symptoms, told Plaintiff he did not know exactly what Plaintiff got sick from, and told Plaintiff, "you should get more sunlight." Plaintiff states that he had continuously been denied recreation, showers, soap, a towel, underwear, sheets and bedding, and a properly fitting uniform. He alleges these issues were addressed after he became sick, but he was "transfer[r]ed out of the pod for continuing to griev[e] the cleanliness of [the] unit." Plaintiff also asserts he developed asthma-like symptoms and shortness of breath while "being exposed to mass punishment/tear gas/pepper spray" in Defendant Miller's unit "as []part of an []unconstitution[al] D.O. 801 'over[r]ide' policy to force inte[]grat[ion]/reclass." He alleges Defendants Miller and Shinn's policy denied him basic needs and caused "needless pain/suffering" after he became seriously ill; he suffered emotional distress "by excessive transfers"; and his lungs were harmed, and he suffers shortness of breath from "prolonged exposure to tear gas."

## IV.     Failure to State a Claim

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Policy Claims

In each count, Plaintiff appears to be raising claims regarding ADC policies. To state a claim based on a policy, custom, or policy, a plaintiff must show that: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino County*, *Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in questions." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the [entity], that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'" *Castro v. County of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

It is unclear which policy or policies Plaintiff is referring to or how enforcement of those policies violated his Eighth Amendment rights. Plaintiff does refer to Department Order (DO) 801, which relates to Inmate Classification, but he does not identify which portion of this policy is relevant to his claims or how enforcement of it violated his Eighth Amendment rights. Similarly vague are his references to an IHP integration form, forced integration, and "reclass." Absent more information, Plaintiff's allegations are simply too vague and conclusory to state a claim. Thus, the Court will dismiss without prejudice Plaintiff's policy claims.

. . . .

. . . .

**B.     Medical Care Claim**

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs."  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be

substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff's allegations are vague and conclusory and do not appear to relate to the medical treatment he received once he became ill with the coronavirus or some other infectious disease. Moreover, Plaintiff's allegations do not suggest that any of the named Defendants acted with deliberate indifference to his serious medical needs. Thus, the Court will dismiss without prejudice Plaintiff's medical care claim.

### C. Conditions of Confinement

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff alleges in Count One that Defendants Scott and Shinn failed to ensure the safety and cleanliness of the unit, but he does not identify what each Defendant did or failed to do or how each Defendant's actions or inactions rose to the level of deliberate indifference to Plaintiff's health or safety. Likewise, Plaintiff also does not allege that either Defendant was responsible for Plaintiff being denied recreation and showers on a regular basis or for exposing Plaintiff to excessive tear gas; when this occurred; whether he raised these issues with either Defendant; what response, if any, either Defendant provided; or how each Defendant's conduct rose to the level of deliberate indifference. Similarly, Plaintiff's allegation in Count Three that Defendant Miller was "in charge of the

normal operations of the unit" does not suggest that Defendant Miller was aware of, or responsible for, Plaintiff being denied recreation, showers, soap, a towel, underwear, bedding, and a properly fitting uniform. Plaintiff's allegations are too vague and conclusory to state a claim. Thus, the Court will dismiss without prejudice Plaintiff's conditions-of-confinement claims in Counts One and Three.

**D.     Disciplinary Proceedings**

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff has failed to state a due process claim because he has failed to allege that he was subjected to any atypical and significant hardships. *See Sandin*, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not atypical and significant); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (seven months of disciplinary confinement

"does not, on its own, violate a protected liberty interest"); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two and one-half years' administrative segregation is not atypical and significant); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating a prisoner's due process rights); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security without a hearing does not infringe on any protected liberty interest). Thus, the Court will dismiss without prejudice Plaintiff's disciplinary claims.

## V.     Leave to Amend

For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The first amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Plaintiff may include only one claim per count.

A first amended complaint supersedes the original Complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

. . . .

If Plaintiff files an amended complaint, Plaintiff must write short, plain statements telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the Defendant who violated the right; (3) exactly what that Defendant did or failed to do; (4) how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional right; and (5) what specific injury Plaintiff suffered because of that Defendant's conduct. *See Rizzo*, 423 U.S. at 371-72, 377.

Plaintiff must repeat this process for each person he names as a Defendant. If Plaintiff fails to affirmatively link the conduct of each named Defendant with the specific injury suffered by Plaintiff, the allegations against that Defendant will be dismissed for failure to state a claim. **Conclusory allegations that a Defendant or group of Defendants has violated a constitutional right are not acceptable and will be dismissed**.

## VI.   Warnings

### A.   Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B.   Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.   Possible "Strike"

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).

Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### D.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 4) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)     The Complaint (Doc. 1) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(4)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g) and deny any pending unrelated motions as moot.

. . . .

. . . .

. . . .

. . . .

. . . .

JDDL-K

(5) The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

Dated this 8th day of December, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge