MDR

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Paul Blomdahl, | No.   CV 21-01863-PHX-MTL (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Director David Shinn, et al., | |
| Defendants. | |

**I.   Procedural History**

Plaintiff Adam Paul Blomdahl is confined in a Maricopa County Jail, is representing himself, and has been granted permission to proceed in forma pauperis. The Court dismissed Plaintiff's civil rights Complaint because Plaintiff had failed to state a claim. Plaintiff filed a First Amended Complaint, which the Court also dismissed because Plaintiff had failed to state a claim.

Pending before the Court is Plaintiff's Second Amended Complaint (Doc. 10). The Court will dismiss the Second Amended Complaint and this action.

**II.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Second Amended Complaint**

In his three-count Second Amended Complaint, Plaintiff sues Defendant Arizona Department of Corrections Director David Shinn, Disciplinary Captain Brennen, and Correctional Officer III/Unit Manager Miller.  Plaintiff seeks declaratory and injunctive relief, monetary damages, attorney's fees, and his costs of suit.

. . . .

In **Count One**, Plaintiff seeks declaratory and injunctive relief related to an alleged violation of his Fourteenth Amendment due process rights.  He contends Defendants Shinn and Brennan's "custom and policy in Plaintiff's [unit]" from November 2019 until September 2021, caused "a reinjury to Plaintiff's health and needless pain/suffering."  Plaintiff alleges that Defendants Shinn and Brennan have "been aware of complained elements in this lawsuit by prior litigation" and that "[k]nown violations can be traced back to an 'Old Arpaio racket' in an attempt to gain forced labor from prison chain gangs."  He claims he has been subjected to "excessive transfers, unavailable gr[ie]vance process, a denial of medical records, proving a deprivation of basic needs," and has become "seriously ill w[ith] COVID 19/infectious disease, threats of violence, excessive exposure to tear gas – pepper spray, an unfair ihp/inte[]gration policy & custom, stealing and theft from inmates[,] including Plaintiff, to force him into a prison chain gang for profit."

Plaintiff asserts his claim arises from Defendants' "obsessive abuse of authority/due process violations, to use threats[,] illegal force and/or violence to push Plaintiff out of his perm[a]nent . . . housing assignment."  Plaintiff alleges that due to Defendants' Shinn and Brennan's "failure to uphold a healthy and safe prison environment," he has suffered "injury/re-injury"; a "violent deadly illness"; "medical pain and suffering"; emotional distress; "extreme harm to [his] breathing system"; and "damage to his health and well-being "by the constant theft, har[]assment and deprivation of basic needs & safety/security."

In **Count Two**, Plaintiff alleges Defendant Miller subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  He contends Defendant Miller was aware that Plaintiff had been denied "basic needs," including a "clean new sport bottle for recreation."  Plaintiff asserts an old water bottle had been left in his cell.  According to Plaintiff, the water bottle had been rinsed out, but "needed to be taken apart from the nozzle."  He claims he did not know how to take the water bottle apart and did not want to break the water bottle.

. . . .

Plaintiff asserts he became sick in June 2020, after using the water bottle for months. He contends that "[b]efore getting sick and losing his lunch that day," he had drunk a lot of water from the water bottle. Plaintiff alleges he "returned from medical deathly ill, was puking blood and [had been given] an injection for the symptoms." He claims that when he returned to his cell, he "decided to risk 'breaking' the water bottle by taking apart the nozzle." When he did, there was "black gunk/mold substance discovered inside the nozzle, loos[el]y hanging [and] continu[]ing to come out." He asserts "this is what caused Plaintiff's serious illness" and alleges he subsequently stopped using the water bottle and "was no longer sick from puking."

Plaintiff alleges he had sent numerous complaints to Defendant Miller about "becoming sick and basic needs," but Defendant Miller was "deliberately indifferent by not addressing those claims and resorting to excessive transfers to remove Plaintiff from the unit[] to avoid the issues." Plaintiff contends that as a result of Defendant Miller's deliberate indifference, he became "deathly ill"; "reinjur[ed] his digestive tract with infectious disease COVID[-]19"; and suffered for over three hours with convulsions, vomiting, dry heaving, and "puking blood," requiring emergency medical care and an "injection for symptoms."

In **Count Three**, Plaintiff alleges Defendant Miller subjected him to cruel and unusual punishment in violation of the Eighth Amendment, causing "serious illness and disease to Plaintiff's lungs/breathing/resp[ir]atory system" by "prolonged exposure to tear gas/pepper spray[] for more than a (6) . . six month period, w[ith] harmful exposure at least (1) once or (2) twice a week, at about (3) three or (4) four h[ou]rs at a time." Plaintiff contends Defendant Miller was "completely aware" of his conditions of confinement because she was "notified about ex. pepper spray & denial of recreation on [Plaintiff's] (3) three day rec[reation] schedule, & depr[i]vation of fresh air for recreation outside."

Plaintiff also asserts that during the "ex. gas exposure" between January and July 2020, he had been repeatedly denied recreation by Defendant Miller and his "griev[ance]s were sent to her inbox about "rec ex. teargas/health concerns, [but were] ignored." Plaintiff

claims Defendant Miller was deliberately indifferent to his health and safety "by resorting to a custom/policy of excessive transfers, removing [Plaintiff] from [the] unit temp[o]rar[i]ly" and, when Plaintiff returned, not addressing the issues regarding "conditions/confinement health concerns w/rec. & ex. tear gas that traveled through the air vents[] in the cluster of pods." Plaintiff alleges "[c]orrective action was never taken and[,] ultimately[,] Plaintiff continued to suffer ex. tear gas exposure." He claims this harmed his lungs, causing disease and illness. He contends that when he returned to the unit, Defendant Miller was no longer there, "but the illegal custom persisted in the unit to deprive recreation & use [e]x[c]essive tear gas, causing injury."

Plaintiff alleges Defendant Miller "repeatedly denied rec[reation] & used excessive tear gas while Plaintiff was in [the unit]." He asserts this caused prolonged pain and suffering, "lung disease/illness, [CO]PD, emph[yse]ma, lymphoma symptoms, resp[ir]atory cancer/failure," wheezing, "long term effects," coughing, emotional distress, and "general damage to Plaintiff's health and wellbeing."

**IV.     Failure to State a Claim**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A.  Count One – Defendants Shinn and Brennen

Plaintiff alleges his claim in Count One arises from Defendants Shinn and Brennen's "obsessive abuse of authority/due process violations" and their "failure to uphold a healthy and safe prison environment." Plaintiff's allegations are devoid of any specific information as to what Defendants Shinn and Brennen did, or when they allegedly did it. Plaintiff's allegations are too vague and conclusory to state a claim against Defendants Shinn and Brennan based on their "obsessive abuse of authority/due process violations" and "failure to uphold a healthy and safe prison environment."

In addition, the requisite elements of a § 1983 claim based on a policy, practice, and custom are that: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001); *see also Edgerly v. City and County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. It is not enough merely to assert that unlawful policies exist; the bare allegation of an unlawful policy is a legal conclusion or conclusory statement that does not satisfy the pleading requirements. *See, e.g., AE ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Although Plaintiff generally refers to a "custom and policy," Plaintiff has not identified a specific policy that he alleges resulted in his injuries, let alone alleged facts to support a conclusion that any particular policy was deficient or that the policy was the moving force behind his injuries. Plaintiff's allegations are too vague and conclusory to state a claim.

Thus, the Court will dismiss Count One and Defendants Shinn and Brennen.

. . . .

### B.   Counts Two and Three – Defendant Miller

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennen*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

In Count Two, Plaintiff alleges Defendant Miller was aware he had been denied a "clean new sports bottle," but alleges no facts regarding what information he provided to Defendant Miller, when he provided it, what response, if any Defendant Miller gave, and how that response rose to the level of deliberate indifference to Plaintiff's health or safety. In addition, it appears Plaintiff complained to Defendant Miller *after* he was sick, and Defendant Miller did not address those claims and "resort[ed] to excessive transfers to remove Plaintiff from the unit[] to avoid the issues." This does not support a conclusion that Defendant Miller acted with deliberate indifference to Plaintiff's health and safety or that Plaintiff suffered any harm from the failure to address his claims. Thus, the Court will dismiss Count Two.

In Count Three, Plaintiff alleges he suffered a variety of issues from "prolonged exposure" to pepper spray and tear gas traveling through the air vents in his cell and from not being able to access "fresh air for recreation outside." Plaintiff's allegations are rambling, disjointed, and too vague and conclusory to support a conclusion that Defendant

Miller acted with deliberate indifference to his health or safety. Thus, the Court will dismiss Count Three.

**V.   Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)   The Second Amended Complaint (Doc. 10) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(2)   The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

(3)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

Dated this 23rd day of February, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge